**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**THE LIMU COMPANY, LLC,,**

        **Plaintiff,**

**-vs-**                                                        **Case No. 6:12-cv-255-Orl-31DAB**

**ROBERT DEAN, JR.,**

        **Defendant.**

_____

## ORDER AND REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration with oral argument[1] on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION FOR PRELIMINARY INJUNCTION (Doc. No. 3)** |
| **FILED:** | **February 17, 2012** |
| **THEREON** it is **ORDERED** that the motion is **DENIED** as moot. | |
| **MOTION:** | **MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT ROBERT DEAN, JR. (Doc. No. 24)** |
| **FILED:** | **April 2, 2012** |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**. | |

LIMU Company, LLC is a successful network marketing company that sells products through a network of independent distributors. LIMU filed suit against its former independent distributor, Defendant Robert Dean, Jr., seeking to enjoin him from selling a competing product on a competing

---

[1] Oral argument and an evidentiary hearing were held on June 5, 2012.

distribution line. Doc. 1, 3. Dean, although served, did not file an answer and LIMU has now moved for default judgment against him. Doc. 24. It is respectfully **RECOMMENDED** that Plaintiff's Motion for Final Default Judgment be **GRANTED.**

## I. *Procedural History*

On February 17, 2012 LIMU Company, LLC filed its Complaint for Injunctive Relief and Motion for Preliminary Injunction against Defendant Robert Dean, Jr. Doc. 1, 3. Dean never file an answer and LIMU moved for entry of a default against him (Doc. 21), which the Clerk entered on March 29, 2012. Doc. 23. Plaintiff moved for Default Judgment on April 2, 2012 (Doc. 24) and the matter came on for evidentiary hearing on June 5, 2012.

## II. *Applicable Law of Service of Process and Defaults*

The district court may enter a default judgment against a properly served defendant who fails to defend or otherwise properly appear pursuant to Federal Rule of Civil Procedure 55(b)(2); *DirecTV, Inc. v. Griffin*, 290 F.Supp.2d 1340, 1343 (M.D. Fla. 2003). Before the court may enter a final default judgment, the clerk must enter a default when the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a); *see also Solaroll Shade & Shutter Corp. v. Bio-Energy Sys.*, 803 F.2d 1130, 1134 (11th Cir. 1986) ("Rule 55 applies to parties against who affirmative relief is sought who fail to 'plead or otherwise defend'" (citation omitted)). Notwithstanding the entry of default by the clerk, "a defendant's default does not in itself warrant the court in entering a default judgment." *Nishimatsu Constr. Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Therefore, the court must evaluate whether it is proper to enter a default judgment. "A 'defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, and is barred from contesting on appeal the

facts thus established.'" *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (citations omitted).

The Court must confirm that the defaulting defendant was properly served under the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 4(e)(2)(B) allows service on an individual by leaving a copy of the summons and complaint at the defendant's dwelling or usual place of abode with someone of suitable age and discretion who resides there. Fed. R. Civ. P. 4(e)(2)(B). Alternatively, under Rule 4(e), service is accomplished by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made or by delivering a copy to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. Pro. 4 (e).

On March 1, 2012, LIMU effected service on Dean by having a process server serve the Summons, Complaint for Injunctive Relief (Doc. 1), Motion for Preliminary Injunction and Memorandum of Law in Support Thereof (Doc. 3), and Request for Oral Argument on Plaintiff's Motion for Preliminary Injunction and Memorandum of Law in Support Thereof (Doc. 4) at Dean's residence or usual place of abode at 3603 Fairburn Circle, NW, Atlanta, Georgia 30331. See Doc. 14. The service documents were left with Robert Dean, Sr., who is a person of suitable age and discretion who resides at that address. See Doc. 14. Robert Dean, Sr. identified himself to the process server as the father of Robert Dean, Jr. and informed the process server that Robert Dean, Jr. lived at that address. See Doc. 14; Doc. 28 (process server inquired of Robert Dean, Sr., as to whether Robert Dean, Jr. resided at the address and he told server that he did).

Service was proper pursuant to Fed. R. Civ. P. 4(e)(2)(B) because a copy of the Summons and Complaint were left at Dean's dwelling or usual place of abode with Robert Dean, Sr., his father, who is someone of suitable age and discretion who resides there. Service was also proper pursuant to Fed.

R. Civ. P. 4(e)(1) because Florida law (this Court's location) authorizes service by leaving a copy of the summons and complaint at the defendant's usual place of abode with any person residing therein who is 15 years of age or older and informing the person of their contents. See Fla. Stat. 48.031(1)(a). Service was also proper pursuant to Fed. R. Civ. P. 4(e)(1) because Georgia law (where service was made) authorizes service by leaving the requisite pleadings "at the defendant's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein." *See* O.C.G.A. § 9-11-4(e)(7). On March 6, 2012, LIMU filed its Proof of Service as to Dean. Doc. 14.

Robert Dean, Jr., was properly served with a summons and the Complaint and his failure to timely respond to the Complaint and subsequent entry of default against him serve to admit the well pleaded allegations of the Complaint. *See, e.g.*, *Buchanan v. Bowman,* 820 F.2d 359 (11th Cir. 1987) (in defaulting, defendants "admit the plaintiff's well-pleaded allegations of fact.").

### III. *Permanent Injunction and Jurisdictional Amount*

LIMU seeks injunctive relief against Dean as set forth in the Complaint. Doc. 1. LIMU is a successful network marketing company that sells products through a network of independent distributors. See Doc. 1, ¶¶16-22, Ex. Each of LIMU's independent distributors enters into a Member Agreement with LIMU, which incorporates by reference the LIMU Policies and Procedures. See Doc. 1, ¶¶20-22, Ex. Dean became a LIMU member by executing a Member Registration and Agreement on or about January 28, 2011. See Doc. 1, ¶¶23-26, Ex. The Member Registration and Agreement bound Dean to abide by both its own terms and the LIMU Policies and Procedures (the Member Registration and Agreement and LIMU Policies and Procedures are collectively referred to herein as the "Agreement"). See Doc. 1, ¶¶ 27-32, Ex. The Policies and Procedures, which Dean expressly agreed to abide by, prohibit Dean from directly or indirectly soliciting LIMU's Members during the term of the Agreement and for one (1) year after the termination of the Agreement:

> b) Non-Solicitation
>
> During the term of the Member Agreement and one year after termination, and for so long thereafter as a Member is entitled to receive or share in, directly or indirectly, any compensation based upon or relating to the sales or earnings of a previously owned Company Membership, Members shall not directly or indirectly solicit, induce or otherwise attempt to persuade any Company Member to sell, resell, or promote the products or business opportunities of any other direct sales, network marketing or multi-level marketing company. Furthermore, for the same period of time, Members shall not, directly or indirectly, solicit, induce or otherwise attempt to persuade any Member to cease being a Company Member. No products or services except for The Limu Company's products or services shall be sold or shown at any event where The Limu Company's products or services are shown.

See Doc. 1, ¶¶33-42 , Ex.

In direct violation of the Agreement, Dean convened a meeting of approximately thirty-eight (38) LIMU Members at which he directly and indirectly solicited them to participate in another network marketing company called Momentis. See Doc. 1, ¶¶ 43-72 , Ex. Since that meeting, Dean and other LIMU Members acting in concert and participation with him have continued to recruit other LIMU members for participation in Momentis through nationwide conference calls, meetings, social media, and Dean's Momentis website, which permits people, including LIMU Members, to join Momentis in Dean's downline organization. See Doc. 1, ¶¶ 73-94, Ex. Although LIMU properly terminated Dean's Agreement on February 1, 2012, Dean's solicitation efforts, and the efforts of those acting in concert and participation with him, have harmed and continue to irreparably harm LIMU through the loss of a significant portion of LIMU's valuable network of LIMU Members, loss of business goodwill, loss of revenue, harm to reputation, disruption to business and loss of distributor confidence in the opportunities LIMU offers. Doc. 1, ¶¶ 95-136, Ex. Gary Raser, the founder, president and Chief Executive Officer of LIMU, testified at the hearing that the amount of damages caused by Dean's interference with business relationships significantly exceeds $75,000, and in the past, Dean's distributorship organization – including 3,500 to 4,000 distributors – had "generated

millions of dollars in revenues" on an annual basis; Dean's activities were disrupting LIMU's business daily.

As alleged in LIMU's Complaint (Doc. 1) and based on Mr. Raser's testimony, Dean's recruiting and solicitation actions constitute a breach of the Agreement and tortious interference with LIMU's contractual and advantageous business relationships. See Doc. 1, ¶¶ 100-136, Ex. The Court finds that permanent injunctive relief is appropriate. The party seeking permanent injunction must show: (1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate remedy at law for the violation of this right; and (3) irreparable harm will result if the court does not order injunctive relief." *Alabama v. United States Army Corps of Engineers*, 424 F.3d 1117, 1128 (11th Cir. 2005); *Saadi v. Maroun*, Case No. 8:07-cv-1976-T-24MAP, 2009 WL 3617788, *2 (M.D. Fla. Nov. 2, 2009).

By Dean's failure to respond to the Complaint and based on the testimony of Mr. Raser, LIMU has shown that Dean violated LIMU's rights, that there is no adequate remedy at law, and that LIMU will suffer irreparable harm to the relationships with LIMU's members and customers, business goodwill, and reputation if an injunction is not imposed against Dean. See Doc. 1, ¶¶ 100-145. LIMU contends that there is no calculation of damages issue and nothing should delay entering a default judgment because LIMU seeks only narrowly tailored injunctive relief for a period of one (1) year following termination of the Agreement.

It is respectfully **RECOMMENDED** that a default judgment be **GRANTED** with the following permanent injunctive relief be entered (as proposed by LIMU) as follows:

1. Effective until February 1, 2013, Dean and all persons acting in concert or participation with Dean shall not directly or indirectly solicit, induce or otherwise attempt to persuade any LIMU

Member to sell, resell, or promote the products or business opportunities of any other direct sales, network marketing or multi-level marketing company, including but not limited to Momentis;

2. Effective until February 1, 2013, Dean and all persons acting in concert or participation with Dean, shall not directly or indirectly, solicit, induce or otherwise attempt to persuade any LIMU Member to cease being a LIMU Member.

Further, the Clerk should be directed to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on June 5, 2012.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy